UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:18CR262 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| TONY OLDS, | ) | **OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter is before the Court on the Government's Motion for Reconsideration. (Doc. 42). Because this Court made a clear legal error in suppressing both the firearm and the magazine, the Government's Motion is **GRANTED**.

## I. BACKGROUND FACTS

In the late night of March 18, 2018, City of Youngstown police officers noticed a car parked on the street against traffic, in violation of City Ordinances. (Doc. 41, PageID: 150). Officers Villaplana and Weibel circled around and approached the parked car from the rear. (*Id.* at 151). Villaplana exited his cruiser and approached the driver side of the vehicle while Weibel approached the passenger side. (*Id.*).

The officers identified two individuals in the vehicle. The driver was identified as

- 1 -

Claxton Lebron. (*Id.* at 152). Defendant Tony Olds sat in the passenger seat. (*Id.* at 152; 190). According to Villaplana, Lebron appeared nervous. (*Id.* at 153). Lebron moved his hands throughout the car, reaching down and underneath him. (*Id.*). Lebron also made quick movements toward the glove compartment of the vehicle. (*Id.*; 163). Due to the movements of Lebron, Villaplana repositioned himself in order to view Lebron's hands at all times. (*Id.* at 153).

Upon repositioning, Villaplana noticed the stainless steel barrel of a firearm in plain view underneath the driver's front seat. (*Id.* at 154). Villaplana immediately notified his partner and removed Lebron from the vehicle. (*Id.*). Villaplana then arrested and placed Lebron in the back of the police cruiser. (*Id.*). While in the cruiser, Lebron told the police he owned the vehicle, the firearm and the marijuana blunt found in the center console. (*Id.* at 155; 172-73).

Meanwhile, Officer Weibel removed Defendant from the vehicle. (*Id.* at 155). As Weibel performed a pat-down search for officer safety, he noticed a cell phone in Defendant's pocket. Weibel did not notice anything else suspicious. (*Id.* at 165; 191-93). After the pat-down, Defendant was free to leave but instead remained at the scene. (*Id.* at 155; 191-92). At some point, Defendant offered to move the vehicle (*Id.* at 167), as Lebron's residence was located on the same street where this scene unfolded. (*Id.* at 168; 173).

After his discussion with Lebron, Officer Villaplana returned to the vehicle to perform an inventory search pursuant to department policy. (*Id.* at 155-56). During his search, Villaplana uncovered a second firearm located in the glove compartment. (*Id.* at 156). Like most vehicles, the glove box was located in front of the passenger's seat. (*Id.*). The firearm was loaded and ready for use. (*Id.*). After finding the second firearm, Villaplana signaled to Officer Weibel to

arrest Defendant. (*Id.* at 156; 193).

Officer Weibel acquiesced and arrested Defendant. (*Id.* at 203-204). Weibel then performed a more thorough search of Defendant. (*Id.* at 194). It was at this time when Weibel found a loaded magazine on Defendant's person, under Defendant's cell phone in his pocket. (*Id.*). Authorities later determined that the magazine fit the firearm found in the glove compartment. (*Id.* at 194-95).

On May 23, 2018, the Grand Jury indicted Defendant with one count of Felon in Possession of a Firearm/Ammunition, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). On September 7, 2018, Defendant filed his Motion to Suppress the weapon and the ammunition. (Doc. 15). The Government responded on September 26, 2018. (Doc. 18).

This Court held a Suppression Hearing on March 14, 2019. Both Officer Villaplana and Weibel testified to the above facts. The Court ultimately granted Defendant's Motion to Suppress and suppressed both the firearm found in the glove box and the magazine located on Defendant. On April 9, 2019, the Government filed its Motion asking the Court to reconsider its ruling. (Doc. 42). Defendant did not file an opposition.

## II. LAW & ANALYSIS

### A. Standard of Review

When asked to reconsider a criminal judgment, courts in the Sixth District apply Federal Rule of Civil Procedure 59(e). *See generally*, *United States v. Correa-Gomez*, 328 F.3d 297 (6th Cir. 2003); *United States v. Reeves*, 2013 WL 6507353 (N.D. Ohio Dec. 12, 2013). Rule 59(e) allows "the district court to correct its own errors, sparing the parties and appellate courts the burden of unneccesary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th

Cir. 2008). Furthermore, the Rule "permits district courts to amend judgments where there is: '(1) clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Reeves*, at *1 (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

The Government argues the Court clearly erred in suppressing both the firearm and the magazine found on Defendant. For the following reasons, the Court agrees.

**B.    Suppression of the Firearm**

The Court clearly erred when it suppressed the firearm discovered in the glove compartment. (Doc. 41, PageID: 215). The facts from the Suppression Hearing reflect that officers observed a vehicle illegally parked against traffic. Within a matter of minutes – and before authorities had the opportunity to return to their cruiser – Officer Villaplana noticed the barrel of a firearm in plain view under the driver's seat. Officers immediately removed the driver from the vehicle and arrested him. Pursuant to department policy, police requested a tow truck and performed an inventory search of the vehicle prior to towing. As a result of the inventory search, Villaplana uncovered the second firearm in the glove compartment of the vehicle.

Defendant did not contest these facts. In fact, Defendant agreed and focused solely on whether there was probable cause to arrest and subsequently search Defendant. (*Id.* at 209). The Court agreed and focused on the arrest of Defendant. (*Id.* at 214).

However, the Court mistakenly suppressed the weapon. The officers properly detained and searched the vehicle. Accordingly, the Court committed clear legal error when it suppressed the second firearm discovered during the inventory search of the vehicle.

### C. Suppression of the Magazine

Subsequent to the finding of the firearm, Officer Weibel found a loaded magazine on Defendant's person. The Government justified the search as a one incident to arrest. The question the Court then entertained was whether probable cause existed to justify the arrest of Defendant. The Court determined probable cause did not exist based on the following: (1) the driver's nervous behavior, including his furtive movements towards the glove box; (2) Defendant's lack of any action in the presence of authorities; and (3) Defendant's proximity to the glove box was not enough. Furthermore, the Court dismissed the Government's argument about the total number of guns as a justification because neither officer testified to that as a justification for the arrest of Defendant. (*See* Doc. 41, PageID: 214-15).

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons of things to be seized.

U.S. CONST. amend. IV.

"[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). While the probable-standard is incapable of a precise definition, "the substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citation omitted). This belief of guilt however, must be "particularized with respect to that person" seized. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

Moreover, there is a general proscription against finding probable cause based solely on an individual's "mere propinquity to others...suspected of criminal activity." *Id.*; *see also Skyes v. Anderson*, 625 F.3d 294, 307 (6th Cir. 2010) (mere presence is not sufficient to meet the probable-cause threshold). However, proximity is viewed differently in the context of automobiles, as the limited space of a vehicle may support an inference of a "common enterprise" between its occupants. *See Pringle*, 540 U.S. at 372 (three occupants of a vehicle properly arrested based on inference of the common enterprise of drug dealing); *United States v. Montgomery*, 377 F.3d 582, 590 (6th Cir. 2004) (three occupants of an automobile properly arrested based on common narcotics-related enterprise); *United States v. Birmley*, 529 F.2d 103, 106 (6th Cir. 1976) (three men lawfully arrested based on common enterprise of illegal gun transactions); *but see United States v. Di Re*, 332 U.S. 581, 592 (1948) (no common enterprise among vehicle occupants when informant singles out guilty party).

At the Suppression Hearing, the officers justified their arrest of Defendant based on his proximity to the firearm in the glove box. (Doc. 41, PageID: 176-78; 199-200). Further, neither officer testified to the fact that two different firearms for two different individuals established probable cause to arrest the second occupant. The Court relied heavily on the officers' subjective testimony in suppressing the arrest and subsequent search of Defendant. The Government claims it was clear legal error for the Court to do so.

On reconsideration, the Court agrees with the Government. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also Heien v. North Carolina*, 135 S.Ct. 530, 539 (2014) ("We do not examine the subjective understanding of the particular officer involved"). "[T]he existence of

probable cause 'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'" *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). The inquiry is an objective one; "it matters not whether the officer subjectively believed that he had probable cause for an arrest." *Scheffler v. Lee*, 752 Fed. App'x 239, 244 (6th Cir. Oct. 5, 2018).

Here, the Court erred as it relied heavily on the subjective intentions and testimony of the officers instead of reviewing the totality of the circumstances from an objective viewpoint. To determine whether an officer had probable cause to arrest an individual, courts examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause. *Pringle*, 540 U.S. at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Probable cause is assessed based on totality of the facts, including facts that may dissipate probable cause. *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) ("the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest").

The historical facts here demonstrate: two individuals were in a vehicle late at night, parked illegally on the street where two separate firearms were located. One firearm was beneath the driver seat and a second in front of the passenger in the glove compartment. The vehicle was small. The glove compartment was readily accessible to the passenger as it was located directly in front of the passenger seat. The firearm located in the glove compartment was ready for use. These facts, viewed from a standard of objective reasonableness, provide a reasonable inference that Defendant had knowledge of, and exercised dominion and control over,

the weapon in the glove compartment.

While it is true the driver acted nervously and made furtive movements toward the glove box, the size of the vehicle and location of the glove box support the inference Defendant was readily aware of what the glove box contained. Again, viewed objectively, a reasonable policeman could infer the common enterprise of illicit gun possession. Thus, a reasonable officer could conclude that there was probable cause to believe Defendant violated Ohio's concealed carry laws. *See Pringle*, 540 U.S. at 800-01.

### III. CONCLUSION

The Court committed clear legal error when it suppressed the firearm found in the glove compartment. The arrest of the driver and subsequent search of the vehicle were lawful, a conclusion Defendant does not contest. Whether the discovery of the second firearm established probable cause to arrest Defendant was the issue. And because the Court applied the officers' subjective justification rather than considering the totality of the facts from the viewpoint of a reasonable officer, the Court committed a clear legal error in suppressing the magazine. The Government's Motion is well-taken and is therefore **GRANTED**.

**IT IS SO ORDERED.**

                         s/ Christopher A. Boyko
                         **CHRISTOPHER A. BOYKO**
                         **United States District Judge**

**Dated: May 17, 2019**